606

40 A.3d 435

**Gregg Daniel BACON**

v.

**Paul AREY, et al.**

**No. 2339, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

March 29, 2012.

608

610

612

614

Raj S. Singh, Rockville, MD, for appellant.

James F. Lee, Washington, D.C. & Jared M. McCarthy, Riverdale, MD (George R.H. Johnson, Riverdale, MD, Reema Malhotra, Lee & McShane, PC, Washington, D.C., James L. Parsons, Jr., Lynott, Lynott & Parson, PA, Rockville, MD), all on briefs, for appellee.

Panel: EYLER, DEBORAH S., GRAEFF, and WATTS, JJ.

WATTS, J.

Appellant, Gregg Daniel Bacon,[1] a property owner, appeals a decision of the Circuit Court for Montgomery County granting a motion to strike his fourth amended complaint and entering Declaratory Judgment and a Nunc Pro Tunc Order, dismissing his tort and constitutional claims as well as his claim of an ingress/egress easement to his property, against appellees, Macris, Hendricks & Glascock, P.A. ("MHG") and Douglas H. Riggs, III ("Riggs") (collectively the "MHG Group");[2] the Maryland–National Capital Park and Planning Commission (the "Commission"), Royce Hanson, Debra Y. Daniel, Faroll Hamer, R. Bruce Crawford, Gwen Marcus Wright, Rose Krasnow, and Adrian R. Gardner (collectively the "Commission Group");[3] Audrey D. Hill; Christine Hill;[4]

---

1. In the circuit court, both Gregg Bacon and Michelle Bacon were plaintiffs. On appeal, Gregg Bacon is the sole appellant.

2. MHG is a civil engineering, land planning, surveying and landscape architecture firm. Riggs, a licensed land surveyor, was employed by MHG at the time of events alleged in the third amended complaint.

3. The Commission is a "bi-county agency with jurisdiction over [the] subdivision process in Montgomery County, Maryland." Appellees

Paul Arey and Sara Arey (the "Areys"); Sandy Spring Bancorp, Inc.; Gaither & Associates LLC; Milton Johnson; Charles Mess and Marilyn E. Mess (the "Messes"); William P. Rounds; McCants and Associates LLC; and Warren Lee Brown.[5]

Appellant noted an appeal raising four issues,[6] which we have rephrased as follows:

I. Whether the circuit court erred in entering declaratory judgment in favor of appellees as to appellant's claims for an easement?

II. Whether the circuit court erred in entering a Nunc Pro Tunc Order dismissing appellant's tort and consti-

---

Hanson, Daniel, Hamer, Crawford, Wright, Krasnow, and Gardner were employees of the Commission.

**4.** While a prior appeal in the case was pending, on May 29, 2009, appellant filed a Stipulation of Dismissal dismissing all claims against Christine Hill.

**5.** The appellees listed above are based on those named as defendants in the operative third amended complaint filed by appellant. Of the appellees listed above, only the MHG Group, the Commission Group, and Brown filed briefs in this case. In his brief, Brown adopted and incorporated by reference the arguments made by the Commission Group and the MHG Group "as to why the Third Amended Complaint should be dismissed with prejudice." In its brief, the Commission Group adopted and incorporated by reference the arguments set forth by the MHG Group. The MHG Group incorporated the arguments of the Commission Group and Brown. In a letter dated November 9, 2011, Johnson adopted the briefs "filed or to be filed by other [a]ppellees, in lieu of filing a brief of his own." Pursuant to Maryland Rule 8–523(a), Audrey Hill and the Areys submitted on brief and incorporated by reference the briefs filed by the Commission Group, the MHG Group, "and any other [a]ppellees."

**6.** Appellant raised the issues thus:
 I. The court erred by violating precedent and landlocking multiple properties despite deeded references to a public highway via Farm Road.
 II. The Court erred in its holding that Appellants claims were time-barred despite complete lack of evidence.
 III. The Court misapplied the Standard of Review for Motions to Dismiss and/or Summary judgment Md. Rule 2–501[.]
 IV. The Court erred in dismissing the Appellants claims without allowing Appellants any opportunity for meaningful Discovery.

tutional claims in favor of appellees on the ground of the statute of limitations?

III. Whether the circuit court abused its discretion in striking appellant's second and fourth amended complaints?

IV. Whether the circuit court abused its discretion in dismissing appellant's claims without ruling on appellant's motions to compel discovery?

For the reasons set forth below, we answer each question in the negative and shall, therefore, affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This case concerns appellant's claim of entitlement to an easement to access property he owns in Sandy Spring, Montgomery County, Maryland. The property is a two acre lot which appellant purchased on September 27, 2002, for $40,000. On October 1, 2002, appellant recorded a quitclaim deed for the property. Gold Mine Road lies to the north of appellant's property, and Brooke Road lies to the south. Appellant alleges entitlement to an easement identified as Farm Road, running in a northerly direction from Brooke Road across his property and continuing northward through a Commission conservation easement,[7] until its termination at Gold Mine Road.

Appellant claims that Farm Road, his means of ingress and egress to the property (*i.e.* how he reached Gold Mine Road and Brooke Road), was blocked, thereby depriving him of access to his property and landlocking the property. According to appellant, Farm Road is a "historic right-of-way" or an easement.

Before the circuit court, in the third amended complaint, appellant alleged that Brown and his attorney, Alper, hired

---

7. In 1994, Brown, who owned property to the north of appellant that became the Dellabrooke subdivisions, granted the Commission a conservation easement, which was recorded among the Land Records of Montgomery County on December 30, 1994.

the MHG Group to conduct a survey and prepare subdivision plans and record plats for the Dellabrooke subdivisions that were allegedly prepared inaccurately and failed to include Farm Road. Appellant alleged that Farm Road's access to Gold Mine Road "was permanently cut" in 1994, with the initial approval of Brown's subdivisions, and that northward access of Farm Road to Gold Mine Road was prohibited, in 2001, with approval of the Dellabrooke subdivisions and the "recordation of Plat 21707." [8] MHG prepared Plat 21707 and according to appellant, "did not include or recognize the Farm Road and related rights-of-way."

## The Complaint

On June 9, 2006, appellant filed a Complaint for Equitable Relief and Declaratory Judgment Granting an Easement and Action to Quiet Title Based on Adverse Possession.[9] In the complaint, appellant alleged that the Commission and its predecessor, the Montgomery County Department of Planning, "acted impermissibly, by in effect abandoning the Historic Chandlee Mill Road [also identified as Farm Road] and rendering [appellant] landlocked, without recording any appurtenant easements for properties affected."

## The Amended Complaint

On November 8, 2006, appellant filed an amended complaint, alleging that he had employed a professional land surveyor who concluded that a "historic right-of-way does indeed exist as the 'Old Chandlee Mill Road' that has been described as the 'Farm Road' in various deeds." [10] Appellant alleged entitlement to an "easement by prescription" or an

---

8. Plat 21707, which included the newly created conservation easement for the Commission, was approved on August 3, 2000, and recorded on January 11, 2001.

9. The complaint contained four claims, one claim against Christine Hill, one claim against the Commission, one claim against the Areys, and one claim against the "remaining defendants."

10. The amended complaint did not contain any counts, but rather contained a section labeled "Location of Historic Right-of-Way."

"easement by necessity under the common law." On December 7, 2006, the Commission filed an answer to the amended complaint, raising several affirmative defenses, including laches, estoppel, waiver, and the statute of limitations.

### The Second Amended Complaint

On September 21, 2007, appellant filed a second amended complaint, adding Brown, the Commission Group, and the MHG Group, among others, as defendants [11] and causes of action "based upon recently obtained evidence." [12] In a section labeled "Overview," appellant alleged that he "recently learned the events that led to [ ] lost ingress/egress access and other property rights were caused by a series of fraudulent acts perpetrated in a concert of action among the Defendants."

On September 27, 2007, Christine Hill filed a motion to strike the second amended complaint, urging the circuit court to strike the complaint for failure to comply with Maryland Rule 2–303.[13] Defendants, including the Commission, the

---

**11.** The second amended complaint increased the number of named defendants to thirty-one, listing as follows: Christine Hill; Audrey D. Hill; the Commission; Adrian R. Gardner; Debra Y. Daniel; Royce Hanson; Faroll Hamer; Gwen Marcus Wright; Rose Krasnow; R. Bruce Crawford; Macris, Hendricks and Glascock, P.A.; Douglass H. Riggs, III; Warren Lee Brown; Paul Arey and Sara Arey; Richard S. Alper, Esquire; the Maryland Department of the Environment; Dr. Winston Anderson; James Bell; Karen T. Clark; Gaither & Associates LLC; Milton Johnson; Clifton D. Lee; Charles Mess and Marilyn E. Mess; Craig Offord; Marvin C. Offord; Oneida J. Prather; William P. Rounds; McCants and Associates; and Virginia Markham Smith.

**12.** The second amended complaint contained nine counts, including: (1) Express Easement for Ingress/Egress via Farm Road; (2) Easement by Necessity; (3) Fraud—Slander of Title—Civil Conspiracy to Commit; (4) Fraudulent Concealment—Deceit—Civil Conspiracy—Concert of Action; (5) Trespass to Land—Deceit—Civil Conspiracy—Concert of Action; (6) Negligence; (7) Gross Negligence—Deceit—Concert of Action; (8) Race–Based Discrimination and Equal Protection Violations under Article(s) Six and Twenty Four of Maryland Constitution; (9) Due Process Violations under Article(s) Six and Twenty Four of Maryland Constitution.

**13.** Md. Rule 2–303(b) provides, in pertinent part: "Each averment of a pleading shall be simple, concise, and direct.... A pleading shall

Areys, Alper, Hanson, Daniel, Hamer, Crawford, the MHG Group, Wright, Johnson, Krasnow, the Messes, and Gardner joined in and filed motions to strike the second amended complaint. Other defendants filed motions to dismiss the second amended complaint, including the Maryland Department of the Environment, arguing that appellant failed to comply with the notice requirements of the Local Government Tort Claims Act (LGTCA), and Brown, arguing that appellant's claims were barred by the statute of limitations. Appellant filed oppositions to many of the motions to strike and dismiss.

On January 30, 2008, McCants & Associates filed an answer to the second amended complaint, a cross-claim against the defendants, and a motion to file the answer and cross-claim out of time. The Commission Group, Johnson, and Alper each moved to strike the cross-claim.

On March 13, 2008, the circuit court held a hearing on the motions to strike and dismiss the second amended complaint. During the hearing, the circuit court stated:

> The aspect of this case that stands out, from my perspective, at this point is the current posture of the pleadings and that primarily is the second amended complaint ..., which is 58 pages and names a number of individuals, causes of action against individuals. And in reviewing the motions to strike, it's clear to me that the 58–page second amended complaint does violate Rule 2–303 in that it includes argument, unnecessary recitals of law, immaterial, impertinent, or scandalous matter.
>
> I don't like striking complaints because I just think in essence it prolongs the inevitable, but in this instance, given the contents of the paragraph contained within the second amended complaint that there is an overriding interest to have the complaint conform with the pleadings' require-

contain only such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense. It shall not include argument, unnecessary recitals of law, evidence, or documents, or any immaterial, impertinent, or scandalous matter."

ments—and I certainly will give [appellant] an opportunity to amend[.]

After hearing argument from counsel, the circuit court granted the motions to strike the second amended complaint, ruling orally from the bench as follows:

Since [appellant] is being required to file a third amended complaint in the requirement will be that that third amended complaint is to comply with the rules that govern pleading, that it is to be simple, concise, and direct, contain only such statements of fact as may be necessary to show the pleaders' entitlement to relief. And that the third amended complaint will supersede all previous complaints that have been filed and will operate as the complaint in this case.

So, I'm going to grant the motions to strike the second amended complaint. I'm going to defer on the motion to dismiss with respect to the statute of limitations pending the filing of the third amended complaint. I'm going to establish a new set of dates within which events must take place and, essentially, this operates as a new scheduling order.

The third amended complaint is to be filed by March 28th.

On March 13, 2008, consistent with its oral ruling, the circuit court issued a Nunc Pro Tunc Order providing, in pertinent part, as follows:

1. The Motion to Dismiss [Appellant's] Second Amended Complaint filed by the Defendant, State of Maryland Department of Environment . . . is GRANTED; and [Appellant's] Second Amended Complaint is **DISMISSED.**

\* \* \*

4. Defendants' Motions to Strike [Appellant's] Second Amended Complaint filed by Defendant Christine Hill [ ], Maryland Capital Park and Planning Commission [ ], Paul and Sara Arey [ ], Richard Alper [ ], Douglass Riggs and Marcis Hendricks and Glascock, PA [ ], Royce Hanson, *et al.* [ ], Warren Brown [ ], Audrey Hill [ ], Gwen Wright [ ], Milton Johnson [ ], Rose Krasnow [ ], Charles and Marilyn Mess [ ], and Adrian Gardner [ ] are **GRANTED,** without Prejudice with Leave to Amend by filing a Third Amended

Complaint by March 28, 2008 which complies with Maryland Rule 2–303(b); and it is further

**ORDERED,** that the Third Amended Complaint supersedes all previous Complaints as the only operative Complaint requiring responses from the Defendants.

## The Third Amended Complaint and Remand

On March 28, 2008, in compliance with the circuit court's ruling, appellant filed a third amended complaint for the purpose of "adding additional Defendants based upon recently obtained evidence and [ ] providing a consolidated pleading."[14] The nine counts set forth in the second amended complaint remained in the third amended complaint. Christine Hill and the Commission Group moved to dismiss the third amended complaint, arguing that the complaint failed to state a claim upon which relief could be granted. The MHG Group moved to dismiss the third amended complaint, arguing that appellant's claims were barred by the statute of limitations or, in the alternative, that the MHG Group did not owe a duty of care to appellant.[15]

On June 17, 2008, the circuit court held a hearing on the pending motions. Following argument, the circuit court dismissed the third amended complaint, ruling orally from the bench as follows:

The defendants have filed a motion, several motions, to dismiss the third amended complaint that's been filed, which is actually the fourth complaint that's been filed in this case.

---

**14.** The third amended complaint omitted ten defendants, including: Richard S. Alper, Esquire; the Maryland Department of the Environment; Dr. Winston Anderson; James Bell; Karen T. Clark; Clifton D. Lee; Craig Offord; Marvin C. Offord; Oneida J. Prather; and Virginia Markham Smith. The third amended complaint added one defendant, Sandy Spring Bancorp, Inc. In total, twenty-two defendants were named in the third amended complaint.

**15.** Audrey Hill, Brown, Johnson, and the Areys also filed motions to dismiss the third amended complaint. Appellant filed oppositions to the motions to dismiss.

The legal proceedings in this case began, the initial filing, in June of 2006. There have been subsequent defendants added, subtracted; amendments have been made. The Court has granted leave to make the amendments to the complaint; to comply with the rules of the pleading. And the defendants are making a motion to dismiss on the substantive basis that the statute of limitation precludes [appellant's] claim with respect to Counts 3 through 9.

The undisputed facts in this case reveal that on January 11, 2001, plat 21707 was recorded. The undisputed facts reveal that [appellant] took title to the[ ] property, which was subsequently recorded on October 1st, 2002. The law is clear that [appellant was] on notice at the time that [he] took title.

As to what is contained in the[ ] actual chain of title, even if [he] had not seen it, heard it, or imagined that it existed, accordingly the statute of limitations applies to Counts 3 through 9 in [the] third amended complaint.

In addition, the local government Tort Claims Act applies with respect to the Commission's motion to dismiss. With respect to [the MHG Group], there was a failure to state a claim against those defendants based upon a lack of duty owed by those defendants to [appellant].

The remaining issues before me with respect to Counts 1 and 2, and that is the failure to state a claim in the third amended complaint. The difficulty that I'm having is that this has been a torturous proceeding. The remaining defendants that would apply to those counts need to be on notice as to what it is they are alleged to have done so that they can respond.

I have reviewed the third amended complaint in an effort to make that determination. To determine whether or not there is sufficient allegations contained within the third amended complaint that would permit the remaining defendants to respond to the causes of action that have been alleged against them.

I can't find that there are sufficient causes of action that have been alleged in the amended complaint. I can't find that there is relief that's being sought against those defendants for any causes of action that they are alleged to have done. Accordingly, I am going to grant the motion to dismiss for failure to state a claim with respect to Counts 1 and 2 of the third amended complaint without leave to amend.

On June 17, 2008, the circuit court issued Orders consistent with its oral ruling, including: (1) an Order granting the Commission Group's motion to dismiss the third amended complaint with prejudice, without leave to amend; (2) an Order granting the MHG Group's motion to dismiss the third amended complaint with prejudice; (3) an Order granting Christine Hill's motion to dismiss the third amended complaint with prejudice; (4) an Order granting Audrey Hill's motion to dismiss the third amended complaint as to the claims asserted against her; (5) an Order granting Milton Johnson's motion to dismiss the case against him with prejudice; (6) an Order granting Brown's motion to dismiss the third amended complaint with prejudice; and (7) an Order granting the Areys' motion to dismiss the third amended complaint with prejudice.

On July 7, 2008, appellant filed a motion to alter or amend. On August 6, 2008, the circuit court issued an Order denying the motion. On September 5, 2008, appellant noted an appeal.

On September 30, 2009, this Court issued an Order remanding the case to the Circuit Court for Montgomery County without affirmance or reversal, stating as follows:

It appears from the record of the Circuit Court for Montgomery County in the above-captioned matter that appellants' third amended complaint requested the circuit court to "declar[e] the existence of an express . . . easement from the Bacon's [sic] property to Brooke Road and/or Goldmine Road, as identified in Exhibit 1, and order that this easement shall be the ingress/egress for the Plaintiffs," or, "in the alternative order that the Plaintiffs possess landlocked property and that an implied easement by neces-

sity along the Farm Road . . . is the ingress/egress for the Plaintiffs' property. . . ." Some, but not all, defendants filed motions to dismiss appellants' amended complaint. On June 17, 2008, after a hearing on the motions to dismiss appellants' amended complaint, the circuit court (Rupp, J.) dismissed all claims against the movants. In that oral ruling, the court specified dismissals as to certain movants and then dismissed the case as to "the remaining defendants," and the docket reflects a dismissal as to the "remaining defendants."

It further appears that defendant McCants & Associates, allegedly joined in an earlier complaint as a necessary party by virtue of ownership of property along the Farm Road in question, filed a cross-claim in response to that earlier complaint. The docket does not reflect an adjudication of that cross-claim. Appellant filed a motion to alter or amend the judgment and noted that the record did not contain orders as to all parties. The court denied the motion on August 7, 2008, and Appellant noted this appeal on September 5, 2008. The appellant and some appellees have filed briefs in this Court, and the appeal is presently scheduled for argument on October 7, 2009.

The oral ruling and docket entry dated June 17, 2008 do not conform to the principle that a trial court should declare in writing the rights of all parties who properly seek declaratory relief. *Griffin v. Anne Arundel County,* 25 Md.App. 115, 137 [333 A.2d 612], *cert. denied* 275 Md. 749 (1975); *Secure Financial Service, Inc. v. Popular Leasing USA, Inc.,* 391 Md. 274, 281 [892 A.2d 571] (2006) ("[W]hen entering a declaratory judgment, the court must, in a separate document, state in writing its declaration of the rights of the parties, along with any other order that is intended to be part of the judgment."). Additionally, the record does not reflect a final judgment as to the cross-claim filed by McCants and Associates and does not reflect a clear intention by the court to dismiss appellants' claims against each party who had not moved for dismissal.

Until the circuit court addresses the claim for declaratory relief and adjudicates the cross-claim, neither the orders entered on June 17, 2008 nor the order entered on August 7, 2008 is a final judgment under Maryland Rule 2–602. Since those orders are not certified under subsection (b), they are not yet appealable.

It is, therefore, this 30th day of September, 2009, by the Court of Special Appeals, on its own initiative,

ORDERED, pursuant to Maryland Rule 8–604(d), that the case is hereby remanded to the Circuit Court for Montgomery County, without affirmance or reversal, for further proceedings, including, without limitation, a declaration of the respective rights of the parties and adjudication of all of the claims in the action in accordance with Maryland Rule 2–602. Each party is to bear its own expenses in the above-captioned matter; and it is further

ORDERED that following the declaration of the rights of the parties on remand, any aggrieved party may note an appeal to this Court and may file a motion in this Court for waiver of filing fees as to that appeal. The parties may also file a motion in this Court to use the briefs and record extracts filed in No. 1616, September Term, 2008, and to be permitted to file supplemental memoranda addressing only the judgment on remand.

(Alterations and omissions in original).

On April 6, 2010, in response to the remand order, the circuit court held a hearing and discussed the remand order as follows:

This order doesn't express any views one way or the other on the merits. It just says basically we keep telling the Circuit Courts in declaratory judgment cases to enter a piece of paper that says declaratory judgment. It doesn't matter who wins. Just set out what with the rest of the party, do it, and then we'll look at it and tell you whether you messed it up or not. That's what they told me to do.

At the hearing, the circuit court directed the parties to submit proposed "forms of declaratory judgment" with respect to the

third amended complaint, within forty-five days, by May 21, 2010, stating as follows:

> [L]et's assume that the operative pleading is the third amended complaint. Let's assume that Judge Rupp dismissed all of the claims in there, which he apparently did for the reasons that you all think he did it. Submit your proposed declaratory judgments in respect to the third amended complaint.
>
> And each side will incorporate in its proposed form of declaratory judgment the rulings that it believes Judge Rupp made or the rulings it wishes Judge Rupp had made, and brief it. I will read it. And if we need to do anything else we'll be in touch.

On May 21, 2010, appellees filed responses in accordance with the circuit court's directions.

### The Fourth Amended Complaint

On May 21, 2010, appellant filed two pleadings: (1) a Fourth Amended Complaint for Equitable Relief and Declaratory Judgment and Damages [16] and (2) a Motion for Declaratory Judgment as to Counts I, II and III of [Appellant]'s Verified Fourth Amended Complaint for Equitable Relief and Declaratory Judgment. The fourth amended complaint contained eleven counts, adding two counts not included in the third amended complaint—Count Three for Declaratory Relief, alleging that appellant had an implied easement by prescription, and Count Eleven for Injunctive Relief.

On June 8, 2010, the Commission Group filed a motion to strike the fourth amended complaint and a motion for declaratory judgment, arguing that the filing of the amended complaint and motion "[was] undertaken without leave of the Court, and without citation to any legal authority." The

---

16. In the fourth amended complaint, Michelle Bacon was omitted as a plaintiff. In addition, the following defendants were omitted: Christine Hill; Sandy Spring Bancorp, Inc.; and McCants and Associates LLC. The following defendants were added: Daniel McMullen and the Estate of Leonard McCants.

Commission Group argued that pursuant to Md. Rule 2–322(c), if the court orders dismissal of an action, a party may only file an amended complaint with express leave of the court to amend, and, in this case, no such leave was given.[17]

On June 15, 2010, the circuit court held a hearing on the motions and discussed the remand order as follows:

> Well, as I read the entirety of [the remand order], as I read it that the panel was of the view that the case was not in a posture before them to decide the merits. And that what they were sending it back to the Circuit Court for was number one, to enter a declaration consistent with Judge Rupp's rulings, and two, to dispose of, resolve, make final decisions on any ancillary matters such as the hanging cross-claim.

At the conclusion of the hearing, the circuit court granted the motion to strike the fourth amended complaint, ruling orally from the bench as follows:

> The motion to strike is granted for three reasons.
>
> Number one, as I read the directions from the Court of Special Appeals that in the main, they've indicated quite clearly that the Circuit Court was to do a number of things so that there was a final judgment that could be properly reviewed. And that was the purpose for the remand.
>
> Number two. While the Court of Special Appeals was being polite to the Circuit Court in saying, well, we're not tying your hands, the notion, I've read enough remand orders I think in my life both as a trial Judge and as a lawyer to know what they mean. So without being presumptuous as to what the panel members were subjectively thinking, it's clear to me based on their jurisprudence of the Court of Special Appeals and the Court of Appeals is that they have gotten the message from the Court of Appeals, and they are no longer willing to expend their judicial resources reviewing cases, making decisions, only to be told

---

17. Johnson and Audrey Hill filed concurrences with the Commission Group's motion to strike.

by the Court of Appeals there is no final judgment. So they've now made it clear to the trial Court, give me a final judgment, then we'll do our job.

Those two reasons. Actually there are four reasons.

The third reason is that when Judge Rupp who had the case before me granted the motion to dismiss, he did not grant leave to amend. So on the theory that I take the case as I find it, that ship sailed.

\* \* \*

I conclude that the leave in any event to file a fourth amended complaint is denied, for the fourth reason, is that amendment at this time would be futile.

Also on June 15, 2010, the circuit court issued a Nunc Pro Tunc Order, dismissing the third amended complaint, stating as follows:

In consideration of the Order dated September 30, 2009, from the Court of Special Appeals, and the entirety of the record before the Court, it is this 15th day of June, 2010, by the Circuit Court for Montgomery County, Maryland,

ORDERED, that Counts III, IV, V, VI, VII, VIII, & IX of the Third Amended Complaint are dismissed, as previously ordered on June 17, 2008 and memorialized by written orders entered on June 25, 2008, due to the statute of limitations, and the Local Government Tort Claims Act as applicable to the Maryland–National Capital Park & Planning Commission, Royce Hanson, Debra Y. Daniel, Faroll Hamer, R. Bruce Crawford, Gwen Marcus Wright, Rose Krasnow, and Adrian R. Gardner;

ORDERED, that the previous rulings of this Court dismissing Counts III, IV, V, VI, VII, VIII, & IX of the Third Amended Complaint on June 17, 2008, and memorialized by written orders entered on June 25, 2008, are applicable to all defendants;

ORDERED, that Counts I and II are hereby dismissed consistent with the Declaratory Judgment; and it is further,

ORDERED, that all cross-claims are dismissed, without prejudice.

On the same day, the circuit court issued an Order granting the Commission Group's motion to strike the fourth amended complaint and the motion for declaratory judgment. The Order stated, in pertinent part:

> **ORDERED,** that the Motion to Strike [Appellant]'s Verified Fourth Amended Complaint for Equitable Relief and Declaratory Judgment and Damages, and [Appellant]'s Motion for Declaratory Judgment as to Counts I, II and III of [Appellant]'s Verified Fourth Amended Complaint for Equitable Relief and Declaratory Judgment be, and hereby is, GRANTED;
>
> **ORDERED,** that [appellant]'s Verified Fourth Amended Complaint for Equitable Relief and Declaratory Judgment and Damages be, and hereby is, STRICKEN; and it is further,
>
> **ORDERED,** that [appellant]'s Motion for Declaratory Judgment as to Counts I, II and III of [appellant]'s Verified Fourth Amended Complaint for Equitable Relief and Declaratory Judgment be, and hereby is, STRICKEN.

Also on June 15, 2010, the circuit court issued an order granting "Declaratory Judgment," stating as follows:

> Upon consideration of the entirety of the record before the Court, it is this 15th day of June, 2010, by the Circuit Court for Montgomery County, Maryland,
>
> ORDERED, FOUND AND DECLARED, that the operative pleading—the Third Amended Complaint—establishes two general categories of claims: the equitable/declaratory judgment claims (Counts I & II), and the tort/constitutional claims (Counts III, IV, V, VI, VII, VII, & IX).[18]
>
> ORDERED, FOUND AND DECLARED, that the Third Amended Complaint, construed in a light most favorable to [appellant], establishes the following timeline:

---

18. "Counts III through IX are the subject of a contemporaneously executed Nunc Pro Tunc Order."

a.) 1994—the "northward access" of the farm road, the portion that allegedly runs from [appellant's] Property north through the Commission's conservation easement to Gold Mine Road, "... was permanently cut with the initial approval of Warren Lee Brown's subdivision in 1994," (Third Amended Complaint, ¶ 33);

b.) January 11, 2001—Subdivision Record Plat 21707 is recorded in the land records and the northward access "... was prohibited with the approval of the Dellabrooke Forest and Dellabrooke subdivisions along with the recordation of Plat 21707," (Third Amended Complaint, ¶ 37) and (Record Plat 21707); and

c.) October 1, 2002—[appellant] obtain[s] title to the[ ] property per the[ ] deed. ( [Appellant's] Deed).

[Appellant] took title to the[ ] property after all of the pertinent events averred in the Third Amended Complaint are alleged to have occurred. This suit was filed on June 9, 2006.

ORDERED, FOUND AND DECLARED, that Count I of the Third Amended Complaint sets forth allegations that [appellant is] entitled to an ingress/egress easement via express reference in the[ ] deed or chain of title. Review of the express terms of [appellant's] Deed—which was prepared by [appellant] Gregg Bacon—reflects no language express detailing an ingress/egress easement. A further review of the Third Amended Complaint reveals no averments of any express language contained in any deed or record of title specifically creating an ingress/egress easement servicing [appellant's] property. In the absence of any averments establishing a prima facie claim for an express easement, the Court must declare the absence of an ingress/egress easement servicing [appellant's] property.

ORDERED, FOUND AND DECLARED, that Count II of the Third Amended Complaint sets forth allegations that [appellant is] entitled to an ingress/egress easement under the theory of an implied easement by necessity. To establish a prima facie claim for an implied easement by necessity, [appellant was] required to plead three elements:

The prerequisites to the creation of an easement by necessity can be summed up in three parts: (1) initial unity of title of the parcels of real property in question; (2) severance of the unity of title by conveyance of one of the parcels; and (3) the easement must be necessary in order for the grantor or grantee of the property in question to be able to access his or her land, with the necessity existing both at the time of the severance of title and at the time of the exercise of the easement. *Stansbury v. MDR Development, L.L.C.*, 390 Md. 476, 489, 889 A.2d 403, 411 (2006). A review of the Third Amended Complaint demonstrates that [appellant] sought to have the ingress/egress easement impinge upon or cross approximately 16 separate parcels of property identified in Exhibit 1 to the Third Amended Complaint. [Appellant] failed to plead: (1) that these 16 parcels initially had unity in title; (2) how unity in title amongst the 16 parcels was severed; and/or (3) how the usage of the ingress/egress easement was necessary, at the time of severance of the unity in title for each property, for [appellant's] predecessor in title to access the subject property. In the absence of any averments establishing a prima facie claim for an implied easement by necessity, the Court must declare the absence of an ingress/egress easement servicing [appellant's] property.

ORDERED, FOUND AND DECLARED, that the Cross–Claim filed by McCants and Associates, LLC, against all defendants, was filed when the company charter for McCants and Associates, LLC was forfeited by the Maryland Department of Assessment and Taxation. Such filing is a legal nullity, and without legal force or effect pursuant to *Md.Code Ann., Corporations & Associates Article,* §§ 4A–913(d) and 4A–920. Moreover, even if the Cross–Claim had legal force or effect, the cross-claim consisted of a single paragraph that incorporated, and was purely derivative of, [appellant's] Second Amended [Complaint]. [Appellant's] Second Amended Complaint was struck by order dated March 13, 2008. Accordingly, the foundation for the Cross–Claim cased to exist.

ORDERED, FOUND AND DECLARED, that judgment be and hereby is entered in favor of all defendants consistent with this Declaratory Judgment.

(Footnote in original). On June 28, 2010, appellant filed a Motion to Alter or Amend a Judgment. On July 16, 2010, the circuit court issued an Order denying the motion.[19]

Upon petition by Gaither & Associates, LLC, the Circuit Court for Montgomery County conducted an *in banc* review of the case. On October 6, 2010, the *in banc* panel issued an Order, stating as follows:

This matter having come before an *[i]n banc* panel of the Circuit Court for Montgomery County on the 24th day of September, 2010, upon Petition by Gaither and Associates, LLC's Motion for *[I]n Banc* Review, oral argument having been heard on the matter, and upon consideration of the entire record herein, the Court finds that based on Gaither and Associates, LLC's failure to preserve any issue for review as contemplated by *Md. Const., Art.* IV, § 22, and *Md. Rule* § 2–551(a), it is on this 6th day of October, 2010 hereby

**ORDERED** that Defendant, Gaither and Associates, LLC's Motion for *[I]n Banc* Review be, and hereby is, DENIED.

On November 8, 2010, appellant noted an appeal.

## DISCUSSION

### I. Entry of Declaratory Judgment

#### A. Contentions

Appellant contends that the circuit court improperly granted declaratory judgment in favor of appellees as to his claims for an easement. Appellant argues the circuit court impermissibly landlocked his property "by failing to *presume* the

---

**19.** On July 6, 2010, McCants & Associates, LLC filed a Motion for Appropriate Relief and Motion to File Reconsideration of Order of Default and Reinstatement of Defendant's Cross–Claim Out of Time. On July 30, 2010, the circuit court issued an Order denying the motion.

existence of an easement" despite multiple deeded references to Farm Road as an express easement. Appellant maintains that exhibits accompanying the third and fourth amended complaints, specifically the Lawrence Map, "show the unity of title necessary to establish [his] easement rights via Farm Road[,]" and that he has "the right to use Farm Road as a matter of law."

The Commission Group responds that the circuit court properly granted declaratory judgment in favor of appellees as appellant failed "to establish a prima facie case sustaining his two legal theories of an ingress/egress easement [express easement and implied easement]." The Commission Group argues that "[e]ven if the ultimate effect of the Declaratory Judgment is the landlocking of [a]ppellant's property, such [a] ruling is not contrary to established law," and the circuit court "correctly concluded that the allegations of the Third Amended Complaint failed to satisfy the basic elements of claims for an express easement by deed or an implied easement of necessity."

## B. Standard of Review

■ In *Catalyst Health Solutions, Inc. v. Magill,* 414 Md. 457, 471–72, 995 A.2d 960 (2010), the Court of Appeals stated:

The standard of review for a declaratory judgment entered as a result of the grant of a motion for summary judgment is whether that declaration was correct as a matter of law. We have held that [w]hile it is permissible for trial courts to resolve matters of law by summary judgment in declaratory judgment actions, the court must, in a separate document and in writing, define the rights and obligations of the parties or the status of the thing in controversy. This requirement is applicable even if the action is not decided in favor of the party seeking the declaratory judgment.[20]

---

20. "A summary declaratory judgment [is] proper even though no formal motion for judgment [is] made." *Urbana Civic Ass'n v. Frederick County Bd. of County Comm'rs,* 23 Md.App. 49, 54–55, 325 A.2d 755 (1974) (citation omitted). Thus, to the extent that the declaratory

(Citations and internal quotation marks omitted) (alteration in original).

## C. Relevant Law

### (1) Easements Generally

In *Sharp v. Downey,* 197 Md.App. 123, 159, 13 A.3d 1 (2010), *cert. granted,* 419 Md. 646, 20 A.3d 115 (2011), we recently explained the "basic legal principles governing easements." "An easement is broadly defined as a nonpossessory interest in the real property of another[.] An easement involves the privilege of doing a certain class of act on, or to the detriment, of another's land, or a right against another that he refrain from doing a certain class of act on or in connection with his own land[.]" *Id.* at 159–60, 13 A.3d 1 (citations and internal quotation marks omitted).

Private easements are easements not enjoyed by the public, and every private easement consists of "two distinct tenements—one dominant and the other servient." *Id.* at 160, 13 A.3d 1 (citation and internal quotation marks omitted). In *Sharp,* with Judge Ellen L. Hollander speaking for this Court, we stated that:

> An easement can be described as a right of the owner of the dominant estate—often, a right of way—over the real property that comprises the servient estate. In other words: "A dominant tenant is the owner of '[a]n estate that benefits from an easement'; a servient tenant is the owner of '[a]n estate burdened by an easement.' "
>
> . . . [T]here are several ways to create an easement. "An easement may be created by express grant, by reservation in a conveyance of land, or by implication." An express easement, whether by grant or reservation, must be created by a written memorandum that satisfies the Statute of

judgment in this case declares the rights of the parties and the status of the thing in controversy without a formal motion for summary judgment being made, we will treat the circuit court's declaratory judgment as a summary declaratory judgment.

Frauds; and "a right[ ] of way created by deed" must satisfy " 'the mode and manner prescribed by the recording statutes.' " . . . "An express easement by reservation often arises when a property owner conveys a portion of his property to another, which would otherwise render the retained part inaccessible, so the reservation permits a right-of-way." In contrast, an easement by implication " 'may be created in a variety of ways, such as by prescription, necessity, the filing of plats, estoppel and implied grant or reservation where a quasi-easement has existed while the two tracts are one.' "

*Id.* at 160–61, 13 A.3d 1 (citations omitted).

### (2) Express Easements

In *Kobrine v. Metzger,* 380 Md. 620, 636, 846 A.2d 403 (2004), the Court of Appeals explained:

[A]n easement by express grant or reservation may be created only "in the mode and manner prescribed by the recording statutes." Although no words of inheritance are necessary, the instrument must contain "the names of the grantor and grantee, a description of the property sufficient to identify it with reasonable certainty, and the interest or estate intended to be granted." . . . [W]e limited that requirement to rights of way created by deed and held that a right of way, otherwise sufficiently described, could validly be created by a memorandum that complied with the Statute of Frauds, *i.e.,* a writing signed by the party to be charged or that party's authorized agent.

(Citations omitted).

■ In interpreting an instrument creating an express easement, the Court of Appeals outlined the following procedure:

"In construing the language of a deed, the basic principles of contract interpretation apply. The grant of an easement by deed is strictly construed. . . . The extent of an easement created by an express grant depends upon a proper construction of the conveyance by which the easement was

created. . . . "The primary rule for the construction of contracts generally—and the rule is applicable to the construction of an easement—is that a court should ascertain and give effect to the intention of the parties at the time the contract was made, if that be possible." . . . "

. . .

"A court construing an agreement under this test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intend it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give [way] to what the parties thought the agreement meant or intended it to mean."

*White v. Pines Cmty. Improvement Ass'n,* 403 Md. 13, 31–32, 939 A.2d 165 (2008) (omissions and alterations in original) (citing *Garfink v. Cloisters at Charles, Inc.,* 392 Md. 374, 392–93, 897 A.2d 206 (2006)). "The primary consideration in construing the scope of an express easement is the language of the grant." *Md. Agric. Land Pres. Found. v. Claggett,* 412 Md. 45, 63, 985 A.2d 565 (2009) (citation and alteration omitted).

### (3) Implied Easements by Necessity

"An implied easement is based on the presumed intention of the parties at the time of the grant or reservation as disclosed from the surrounding circumstances rather than on the language of the deed." *Boucher v. Boyer,* 301 Md. 679, 688, 484 A.2d 630 (1984). "[G]rants of easements by implication are looked upon with jealousy and are construed with strictness by the courts." *Condry v. Laurie,* 184 Md. 317, 321,

41 A.2d 66 (1945) (citation omitted). An implied easement by necessity

arise[s] from a presumption that the parties intended that the party needing the easement should have access over the land.... The doctrine of easement by necessity is based upon public policy, which is favorable to full utilization of land and the prescription that parties do not intend to render land unfit for occupancy. The public policy exists in recognition that to allow a landlocked parcel inadvertently to be created affects not only the initial owner of that parcel, but every subsequent owner as well. By cutting off the land from all access to public ways, landlocking a parcel renders the land unuseable for virtually any future purpose.

*Sharp*, 197 Md.App. at 166–67, 13 A.3d 1 (citations, footnote, and internal quotation marks omitted) (alterations added).

In *Stansbury v. MDR Dev., L.L.C.*, 390 Md. 476, 489, 889 A.2d 403 (2006), the Court of Appeals discussed the necessary requirements for creation of an implied easement by necessity:

The prerequisites to the creation of an easement by necessity can be summed up in three parts: (1) initial unity of title of the parcels of real property in question; (2) severance of the unity of title by conveyance of one of the parcels; and (3) the easement must be necessary in order for the grantor or grantee of the property in question to be able to access his or her land, with the necessity existing both at the time of the severance of title and at the time of the exercise of the easement.

As to the first prerequisite—unity of title—" 'the dominant and servient estates must at some point have belonged to the same person.' " *Sharp*, 197 Md.App. at 169, 13 A.3d 1 (quoting *Rau v. Collins*, 167 Md.App. 176, 186, 891 A.2d 1175 (2006)). As to the third prerequisite-necessity-the "necessity must arise at the time of the initial grant of the property, and cannot be established by a subsequent necessity. And, a way of necessity exists only so long as the necessity itself remains. Therefore, the necessity must be continuous, beginning at the

time that the dominant and servient properties are subdivided." *Sharp*, 197 Md.App. at 169–70, 13 A.3d 1 (citations and internal quotation marks omitted). Further, the necessity required is the "strictest necessity, where it would not be reasonable to suppose that the parties intended the contrary[.]" *Stansbury*, 390 Md. at 488, 889 A.2d 403 (citations, alterations, and internal quotation marks omitted).

### (4) *Condry, Johnson,* and *Boucher*

In *Condry*, 184 Md. at 321, 323, 41 A.2d 66, the Court of Appeals reversed the chancellor's "grant[ of] an injunction commanding defendants to remove [an] obstruction from [a] private road, and enjoining them from interfering with complainants's use of the road in the future." In the complaint for injunction, complainants argued that their only access to the county road was over a private road on defendants' property, and that the private road had been used "continuously for many years as a means of ingress and egress[.]" *Id.* at 319, 41 A.2d 66. The Court of Appeals observed, however, that the evidence "suggested that complainants could acquire access to the county road by a rear route" by constructing a bridge over the creek in the rear of the property. *Id.* at 322, 41 A.2d 66. The Court noted that complainants had acquired a parcel of land adjacent to the parcel in dispute, which provided another means of access to the county road by way of a 10–foot road. *Id.* The Court held that where a grantee of an implied easement by necessity "acquires a new way to the estate previously reached by the way of necessity, the way of necessity is thereby extinguished." *Id.* at 321–22, 41 A.2d 66 (citation omitted). The Court stated it would "not recognize a way of necessity if another road to the public highway c[ould] be made without unreasonable expense, even though the other road may be much less convenient." *Id.* at 322, 41 A.2d 66.

In *Johnson v. Robinson*, 26 Md.App. 568, 582, 338 A.2d 88, *cert. denied*, 276 Md. 748 (1975), we reversed and remanded the case with direction to decree a way of necessity, as Robinson, the purchaser, had adequate notice that an easement across his property "[was] necessary to provide [John-

son] ingress and egress to her land." Johnson sold a piece of land to Robinson, but hesitated to provide a deed "because she wanted some means of ingress to and egress from her landlocked property." *Id.* at 569–71, 338 A.2d 88. Johnson eventually signed the deed, but the deed failed to include a reservation for an express easement. *Id.* at 572, 338 A.2d 88. The chancellor determined that if Johnson had an easement, it would have been an implied reservation easement by necessity, "as she [sought] a right of way across property which she conveyed for the benefit of property which she retained." *Id.* at 573, 338 A.2d 88. The chancellor found, however, that no easement by necessity existed because no evidence was presented showing that the "right of way was in use at the time of the sale of the property or at the time of the settlement." *Id.* at 574, 338 A.2d 88. In reversing the chancellor's ruling, we observed that " 'in use at the time of the grant' was but one way a 'necessary and continuous' easement could be made 'apparent' to a purchaser." *Id.* at 580, 338 A.2d 88 (citation omitted). We concluded that because Robinson "admittedly had notice of the problem [of Johnson's access to her property] before the deed [was] signed[,]" that actual knowledge supplanted the notice generated by physical use of the easement and Robinson had "adequate notice of the existence of an easement[.]" *Id.* at 581–82, 338 A.2d 88.

In *Boucher,* 301 Md. at 691, 694, 484 A.2d 630, the Court of Appeals held that application of the "plat reference theory of implied easements" led to the conclusion that the Bouchers had an easement over a street because their deed referred to a plat referencing the street as a right-of-way. The Pipers, owners of an approximate fifteen acre tract in Frederick County recorded a plat establishing two one-acre lots, bisected by a roadway designated as "George Street." *Id.* at 683–83, 484 A.2d 630. The plat indicated that the Pipers were offering to dedicate George Street to public use. *Id.* at 684, 484 A.2d 630. The Pipers conveyed the two lots bounded by George Street to others, in deeds that referenced the Piper Estates plat, and then conveyed the remainder of their interest in the original fifteen acre tract to the Bouchers. *Id.* at 684, 484

A.2d 630. The Court of Appeals held that the "Bouchers ha[d] an implied easement over George Street by virtue of the reference in their deed to the Piper Estates plat, which depicts George Street as a right of way to their property." *Id.* at 695, 484 A.2d 630. The Court stated that "a deed that is silent as to the right of way but refers to a plat that establishes such a right of way creates a rebuttable presumption that the parties intended to incorporate the right of way in the transaction." *Id.* at 689, 484 A.2d 630.

## D. Analysis

### (1) Express Easement

Returning to the case at hand, we conclude that the circuit court properly entered declaratory judgment in favor of appellees as to appellant's claim for an express easement. In entering declaratory judgment, the circuit court stated as follows:

> Review of the express terms of [appellant's] Deed—which was prepared by [appellant] Gregg Bacon—reflects no language express detailing an ingress/egress easement. A further review of the Third Amended Complaint reveals no averments of any express language contained in any deed or record of title specifically creating an ingress/egress easement servicing [appellant's] property. In the absence of any averments establishing a prima facie claim for an express easement, the Court must declare the absence of an ingress/egress easement servicing [appellant's] property.

As the Court of Appeals has held, an express easement can be created only through a written instrument containing "the names of the grantor and grantee, a description of the property sufficient to identify it with reasonable certainty, and the interest or estate intended to be granted." *Kobrine*, 380 Md. at 636, 846 A.2d 403 (citations and internal quotation marks omitted). Our review of the third amended complaint, the Lawrence Map, and appellant's deed reveals that appellant has not alleged the existence of a written instrument expressly granting or reserving an easement over Farm Road for his

property. In the third amended complaint, appellant alleges that there is an express easement "identified by way of the deed reference to Farm Road that traverses [appellant's] property[,]" that "Farm Road is referenced on numerous deeds, and shown on historic tax maps along with a historic survey[,]" and that his "chain of title . . . show[s] an express easement." Neither the Lawrence Map nor appellant's deed to his property includes any express language granting or reserving an easement over Farm Road servicing appellant's property. The fact that other deeds between other parties may have referenced Farm Road as a boundary or that historic tax maps showed Farm Road, as appellant alleged in the third amended complaint, does not create an express easement for appellant's property.[21] Absent "averments of any express language contained in any deed or record of title specifically creating an ingress/egress easement servicing [appellant's] property[,]" we agree with the circuit court that appellant does not have an express easement for ingress and egress over Farm Road.

## (2) Implied Easement by Necessity

▆▆▆ Upon review of the third amended complaint and the record as a whole, we conclude that the circuit court properly entered declaratory judgment in favor of appellees as to appellant's claim for an implied easement by necessity. In granting declaratory judgment, the circuit court found that

---

**21.** Appellant contends that the grant of his property originated from the Gilpin Estate, a large tract of land originally encompassing appellant's property and the conservation easement, among other parcels. At oral argument, appellant argued that an express easement was created by an 1895 deed in which a boundary of the Gilpin Estate is described as "then South 71 degrees West nine perches to the Farm Road then North two degrees . . . ." This language, however, references Farm Road as a boundary line only and not as an express easement. Appellant failed to identify any language in the 1895 deed describing a right of way via Farm Road.

At oral argument, appellant maintained that the Court of Appeals's decision in *Condry*, 184 Md. 317, 41 A.2d 66, supports the argument for an express easement by virtue of the 1895 deed. In *Condry*, 184 Md. at 321–23, 41 A.2d 66, the Court of Appeals, however, discussed implied easements by prescription and necessity, not express easements.

appellant was required to "plead three elements" in order "[t]o establish a prima facie claim for an implied easement by necessity[.]" The circuit court outlined the elements set forth in *Stansbury*, 390 Md. at 489, 889 A.2d 403, stating:

A review of the Third Amended Complaint demonstrates that [appellant] sought to have the ingress/egress easement impinge upon or cross approximately 16 separate parcels of property identified in Exhibit 1 to the Third Amended Complaint [the Lawrence Map]. [Appellant] failed to plead: (1) that these 16 parcels initially had unity in title; (2) how unity in title amongst the 16 parcels was severed; and/or (3) how the usage of the ingress/egress easement was necessary, at the time of the severance of the unity in title for each property, for [appellant's] predecessor in title to access the subject property. In the absence of any averments establishing a prima facie claim for an implied easement by necessity, the Court must declare the absence of an ingress/egress easement servicing [appellant's] property.

From our review, the "Second Count" in the third amended complaint includes three paragraphs alleging an implied easement by necessity. In none of the paragraphs has appellant alleged any of the three elements required for finding an implied easement by necessity. In the "Second Count," appellant alleged the following:

46. [Appellant] incorporate[s] by reference all paragraphs in this pleading as if fully set forth herein.

47. That [appellant] do[es] not have access to the[ ] land. That [appellant is] landlocked if the Court holds that [appellant] do[es] not possess an express easement.

48. In the alternative, [appellant] assert[s] the[ ] claim to a right-of-way under Maryland common law, which allows for this Court to order an easement by necessity as equitable relief for a landlocked parcel of real property such as [appellant's].

As the Court of Appeals has noted: "Grants of easements by implication are looked upon with jealousy and are construed with strictness by the courts." *Condry*, 184 Md. at 321, 41

A.2d 66. As the circuit court observed, appellant failed to allege, for example, unity of title, how unity of title was severed, and that usage of the ingress/egress easement was necessary at the time of severance. Although appellant argues in a reply brief that the Lawrence Map shows unity of title, appellant did not state so in the third amended complaint. Assuming we were to agree that the Lawrence Map shows unity of title, appellant has still failed to plead facts demonstrating the two other elements necessary for creation of an implied easement by necessity as outlined in *Stansbury*, 390 Md. at 489, 889 A.2d 403–how unity of title was severed and that the ingress/egress easement was necessary at the time of severance of the unity of title. We cannot read into the third amended complaint the facts necessary to substantiate a claim for an implied easement by necessity.

 Appellant's argument that the circuit court erred by "failing to *presume* the existence of an easement" is unconvincing. A trial court is not required or permitted to presume the existence of an implied easement by necessity where a party has not demonstrated the circumstances necessary to establish such an easement. "[A]n implied easement is based on the **presumed intention of the parties** at the time of the grant or reservation[.]" *Boucher*, 301 Md. at 688, 484 A.2d 630 (emphasis added).

Appellant's argument that the circuit court failed to apply "direct precedent" is similarly unpersuasive. A review of the holdings in *Condry*, *Johnson*, and *Boucher* demonstrates that the cases are obviously distinguishable from this case and support neither appellant's claim of an easement by necessity nor the claim of an express easement. The issue in *Condry*, 184 Md. at 321–22, 41 A.2d 66 was whether the complainants had another access route to a county road, in which case an implied easement by necessity over a private road on defendants' property would have been extinguished. In this case, appellant has not pled or established facts sufficient to infer the existence of an implied easement by necessity. *Johnson*, 26 Md.App. at 581–82, 338 A.2d 88, involved two parties who had been in contact with one another for many years, such

that prior to signing a deed, the purchaser had "adequate notice of the existence of an easement" across his property. In this case, there are no facts demonstrating that appellant and another party have been in consistent contact such that the other party had "adequate notice" of an existence of an implied easement by necessity over Farm Road servicing appellant's property.[22] In *Boucher*, 301 Md. at 694, 484 A.2d 630, the Court of Appeals addressed the issue of an implied easement established by a plat reference, not an implied easement by necessity. Although appellant references Plat 21707, appellant does not claim that the plat provides him with an easement.[23]

For all of the reasons set forth above, we agree with the Commission Group that the circuit court properly granted declaratory judgment in favor of all appellees as to appellant's claims for an express and implied easement as appellant failed

---

**22.** At oral argument, relying on *Johnson*, appellant argued that an implied easement by necessity is required where property would otherwise be landlocked. Conversely, the Commission Group contended that *Johnson* does not stand for the proposition that an implied easement by necessity must exist when property is landlocked. The Commission Group is correct. In *Johnson*, 26 Md.App. at 580–81, 338 A.2d 88, although we noted that Johnson would be denied access to her property in the absence of an easement, the holding was premised on the issue of notice, i.e. that the purchaser, Robinson, knew that Johnson had no other access except over the property when he bought from Johnson. Indeed, in *Johnson*, we posed the following question: "How can Mrs. Johnson be denied a way necessary to enjoyment of her property through the land of a purchaser who admittedly had notice of the problem before the deed was signed at the instance of that purchaser?" *Id.* at 582, 338 A.2d 88. Nothing in our opinion in *Johnson* supports the conclusion that a court must find an implied easement by necessity for landlocked property where the requirements necessary for the creation of that easement are not demonstrated.

**23.** At oral argument, appellant argued that *Boucher*, 301 Md. 679, 484 A.2d 630, stands for the proposition that property owners have the right by virtue of an easement to keep the streets open and to not have landlocked property. A review of *Boucher*, however, demonstrates that the case involved an implied easement over a private road established by plat reference, not an implied easement by necessity. Nothing in the Court of Appeals's decision in *Boucher*, however, mandates that an easement be implied in order to keep property from being or becoming landlocked.

"to establish a prima face case sustaining his two legal theories of an ingress/egress easement."

## II. The Statute of Limitations and the MHG Group's Duty

### A. Appellant's Contentions

#### (1) Statute of Limitations

Appellant contends that the circuit court erred in dismissing his tort and constitutional claims on the ground that the claims were barred by the statute of limitations. Appellant argues that he learned of the "concert of action to alienate [his] property rights" in August 2007, and that he timely filed the second amended complaint weeks later. Appellant maintains that the circuit court incorrectly assumed that Plat 21707 was in his chain of title. According to appellant, Plat 21707 is "void *ab initio* and irrelevant," and the circuit court erred in finding that appellant should have been aware of the content of the plat and was on notice as to potential claims as early as 2001, upon recording of the plat.

Alternatively, appellant argues that, assuming he learned of the "concert of action to alienate [his] property rights at the inception of the scheme, the tort is ongoing in nature and continues[.]" According to appellant, "the time period for bringing a cause of action in [this] case is three years from the date that [a]ppellant knew, or should have known of the tort (in this case August 2007) *or three years after the injury ceases, or when [a]ppellant is allowed the full enjoyment, use and access of his property.*" Appellant contends that appellees' intentional concealment of the existence of Farm Road continues to this day and that, prior to filing suit, he did not "have any reason or cause to believe that the deeded description of Farm Road in [his] chain of title was extinguished by the acts of [a]ppellees." In his brief, appellant maintains that the statute of limitations did not begin to run until 2007, when Christine Hill blocked access on Farm Road[24] and, therefore,

---

24. In the third amended complaint, appellant alleges: "The southward access to Brooke Road continued **until approximately 2005** when it was

the second amended complaint filed September 21, 2007, was filed within the statute of limitations.

Appellant contends that the circuit court erred in granting a blanket dismissal as to all appellees as appellees who did not assert the defense of statute of limitations, in an answer, "must be deemed to have waived the defense[.]" Alternatively, appellant maintains that dismissal on the ground of the statute of limitations is "generally considered inappropriate in equity cases where there are allegations of fraud and/or negligence[.]"

### (2) The MHG Group's Duty

Relying on *Carlotta v. T.R. Stark & Associates, Inc.*, 57 Md.App. 467, 470 A.2d 838 (1984), appellant argues that the MHG Group owed him an implied duty of care to complete an accurate survey. Appellant maintains that the MHG Group's failure to include Farm Road in the survey "must be considered a breach of a standard of care to the public, including [a]ppellant." Alternatively, appellant argues that the MHG Group's actions are so grievous that they create an immediate apparent duty.

### B. The Commission Group's Response[25]

The Commission Group responds that the circuit court properly dismissed the tort and constitutional claims on the ground that the statute of limitations expired prior to the filing of appellant's complaint. According to the Commission Group, the circuit court "properly invoked the January 11, 2001 filing date of Record Plat 21707 as notice to [a]ppellant of the accrual of his constitutional and tort claims when he took

---

deliberately blocked by Defendant Christine Hill, who placed a chain barrier prohibiting access to property owners from Brooke Road." (Emphasis added)

**25.** The Commission Group contends that the circuit court properly determined that appellant failed to comply with the LGTCA. In light of our conclusion that the circuit court properly determined that the appellant's claims are barred by the statute of limitations, we need not address that issue.

title to the property on October 1, 2002." The Commission Group maintains that Record Plat 21707, contained in the public land records, is in appellant's chain of title. According to the Commission Group, the applicable statute of limitations for the constitutional and tort claims is three years, and the statute of limitations in the case expired on October 1, 2005, as "[a]ppellant was clearly on actual or constructive notice as of October 1, 2002, the date he took title to his property, of any harm or injury to the alleged express easement, the [F]arm [R]oad, caused by Record Plat 21707." [26]

### C. Brown's Response

Brown responds that the circuit court correctly dismissed the claims against him based on the statute of limitations. Brown argues that the "only date specifically referenced in the Third Amended Complaint with regards to [his] alleged actions is 1994[,]" or alternatively, Plat 21707 filed on January 11, 2001, both of which occurred "more than six years before [a]ppellant[ ] named [him] as a defendant[.]" Brown argues that the statute of limitations for appellant's claims of fraudulent concealment, deceit, civil conspiracy, and trespass to land is three years and that the statute of limitations for appellant's claim of slander of title is one year. Brown contends that the statute of limitations has not tolled under either the fraudulent concealment doctrine or the continuing tort doctrine because Plat 21707 is recorded in the public land records and, as such, the regular limitations periods apply.

Relying on *Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981), Brown contends that the facts alleged in the third

---

**26.** The Commission Group contends that appellant failed to exhaust administrative remedies as to Plat 21707, and that "any petition for judicial review should have been filed, at the latest, within 30 days of the date of the recording of Record Plat 21707 on January 11, 2001." In his reply brief, appellant responds that failure to exhaust administrative remedies is irrelevant as he "is not asking to invalidate the Dellabrooke Subdivision" and as the issues of the case "do not fall within the purview of [the Commission]'s subdivision review regulations[.]" On this issue, we agree with appellant and shall not address the matter further.

amended complaint "clearly demonstrate 'knowledge of circumstances which ought to have put a person or ordinary prudence on inquiry[.]' " According to Brown, the statute of limitations as to claims against him expired in 1997, as the third amended complaint's allegations demonstrate that appellant "would have been on inquiry notice (if not actual notice) of the alleged actions of Mr. Brown when the northern access to Gold Mine Road was 'permanently cut' " in 1994. Alternatively, Brown maintains that appellant was on notice of all of the facts concerning the property at the time of its purchase in 2002, and that the statute of limitations expired—at the latest—in 2005, before appellant filed a claim against him in 2007.[27]

### D. The MHG Group's Response

The MHG Group responds that the circuit court properly dismissed appellant's claims on the ground of the statute of limitations because "the limitations period running on claims based on the denial of north access to Gold Mine Road [ ] expired in 2004, at the very latest[,]" and appellant failed to file a claim against the MHG Group until September 2007, after the statute of limitations had expired. Relying on *Bright v. Lake Linganore Ass'n, Inc.*, 104 Md.App. 394, 656 A.2d 377 (1995), the MHG Group argues that a property owner is assigned "complete knowledge of a chain of title . . . irrespective of the owner's actual knowledge of the same[,]" and accordingly, appellant was on notice when he purchased the property in 2002. Relying on *Carlotta*, 57 Md.App. 467, 470 A.2d 838, the MHG Group contends that they owed no duty to appellant because under Maryland law, "a surveyor of a disputed boundary line does not owe a duty of care to a non-reliant third party adjacent landowner. A surveyor, therefore, cannot be held liable to such a plaintiff." At oral argument, the MHG Group argued that the requirement that

---

27. Additionally, Brown argues that "[i]t is not necessary, nor is it proper, to include [him] as a defendant in this case, as he no longer owns any of the subject properties and cannot provide the access rights that [a]ppellant[ is] seeking."

a surveyor in Maryland be licensed does not create a duty to adjoining property owners who did not rely on the work completed by the surveyor.

Relying on Maryland Rule 2–321(c), the MHG Group contends that they "did not waive the[ ] limitations defense" as they "were not required to file an Answer" until fifteen days after entry of a court order on a motion to dismiss. The MHG Group maintains that they timely filed a motion to dismiss the third amended complaint.

## E. Standard of Review

When considering on appellate review the grant of a motion to dismiss a complaint for failure to state a claim upon which relief may be granted,

> a court must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may be reasonably drawn from them, and order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff, *i.e.*, the allegations do not state a cause of action for which relief may be granted.

> Upon appellate review, the trial court's decision to grant such a motion is analyzed to determine whether the court was legally correct. We will uphold the dismissal only if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff.

*McHale v. DCW Dutchship Island, LLC,* 415 Md. 145, 155–56, 999 A.2d 969 (2010) (internal citations and quotation marks omitted).

## F. Relevant Law

### (1) Statute of Limitations

Md.Code Ann., Courts and Judicial Proceedings Art. ("CJP") § 5–101 provides that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of

time within which an action shall be commenced." Slander and libel fall under a different provision, CJP § 5-105, which provides that "[a]n action for assault, libel, or slander shall be filed within one year from the date it accrues."

For purposes of the statute of limitations, when a cause of action accrues in a civil case is determined by application of the "discovery rule." *Doe v. Archdiocese of Washington*, 114 Md.App. 169, 177, 689 A.2d 634 (1997). The "discovery rule" provides that "the action is deemed to accrue on the date when the plaintiff knew or, with due diligence, reasonably should have known of the wrong." *Id.* (citing *Doe v. Maskell*, 342 Md. 684, 690, 679 A.2d 1087 (1996), *cert. denied*, 519 U.S. 1093, 117 S.Ct. 770, 136 L.Ed.2d 716 (1997)). "Nevertheless, the cause of action does not accrue until all elements are present, including damages, however trivial." *Archdiocese of Washington*, 114 Md.App. at 177, 689 A.2d 634 (citations omitted).

Under the "discovery rule," which was expanded generally to all civil cases in *Poffenberger*, 290 Md. at 636-38, 431 A.2d 677, the Court of Appeals held that the statute of limitations is activated by:

[A]ctual knowledge—that is express cognition, or awareness implied from

knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued. In other words, a [person] cannot fail to investigate when the propriety of the investigation is naturally suggested by circumstances known to him; and if he neglects to make such inquiry, he will be held guilty of bad faith and must suffer from his neglect.

(Citations omitted). As such, under the "discovery rule," the statute of limitations begins to run when:

[A] claimant gains knowledge sufficient to put her on inquiry. As of that date, she is charged with knowledge of facts

that would have been disclosed by a reasonably diligent investigation. The beginning of limitations is not postponed until the end of an additional period deemed reasonable for making the investigation.

*Bennett v. Baskin & Sears,* 77 Md.App. 56, 67, 549 A.2d 393 (1988) (citation omitted) (In *Bennett,* 77 Md.App. at 75,77, 549 A.2d 393, we held that because plaintiffs delayed filing an action despite actual knowledge of potential wrongdoing and having been sued for damages for which they considered appellees responsible, the statute of limitations was not tolled). The Court of Appeals has noted, however, that the "discovery rule's" operation is not rigid in certain cases. *Archdiocese of Washington,* 114 Md.App. at 178, 689 A.2d 634. In general, the determination of when the statute of limitations begins to run is a determination for the court. *Id.* When there are "questions of fact relating to when the statute of limitations began to run, those questions should be determined, in a jury trial, by the jury and not the trial judge." *Bennett,* 77 Md.App. at 67, 549 A.2d 393 (citation omitted).

### (a) Fraudulent Concealment

One general exception to the accrual of the statute of limitations occurs in situations in which a defendant fraudulently conceals the cause of action from the plaintiff "so as to prevent its discovery by the exercise of due diligence." *Atwell v. Retail Credit Co.,* 431 F.2d 1008, 1010 (1970), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1251, 28 L.Ed.2d 544 (1971) (The Court of Appeals for the Fourth Circuit, applying Maryland law, held that there was no fraudulent concealment as appellant's claim of concealment was unsupported by the record.). Indeed, CJP § 5–203 specifically provides: "If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." In order for this provision to apply and extend the applicable statute of limitations, a plaintiff must plead fraud or fraudulent concealment with particularity, and the complaint must

"contain specific allegations of how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence." *Archdiocese of Washington,* 114 Md.App. at 187–88, 689 A.2d 634 (citations omitted). The burden is on the plaintiff to prove that he did not discover the alleged wrong within the applicable limitations period despite his exercise of ordinary diligence. *Id.* (citation omitted). Under the fraudulent concealment theory,

> "[n]otice is not limited to actual knowledge of the fraud. Nor does it mean discovery of proof which, if believed, would, in the opinion of counsel, take the case to the jury on the merits. It is not limited to admissible evidence[.]
>
> "Being 'on notice' means having knowledge of circumstances which would cause a reasonable person in the position of the plaintiffs to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged fraud."

*Frederick Road Ltd. P'ship v. Brown & Sturm,* 360 Md. 76, 99, 756 A.2d 963 (2000) (citations omitted).

In *Geisz v. Greater Baltimore Med. Ctr.,* 313 Md. 301, 304, 545 A.2d 658 (1988), a case involving Maryland's wrongful death statute, the Court of Appeals held that, where the plaintiff alleged fraud and where CJP § 5–203 applied, the circuit court erred by granting summary judgment in favor of the defendants on the ground of the statute of limitations. The Court held that, when the plaintiff alleged fraud, there was a factual question as to when the plaintiff should have discovered the action. *Id.* at 317, 545 A.2d 658. Specifically, the Court stated:

> A jury could conclude that the circumstances known to [plaintiffs] would not cause reasonable persons in their position to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged malpractice more than three years before the survival claim was asserted. In *O'Hara v. Kovens,* [305 Md. 280, 503 A.2d 1313 (1986) ], a variety of nonliability hypothe-

ses could have explained the facts known to the *O'Hara* plaintiffs so that limitations was a fact question. Similarly here, cancer which was not responding to proper treatment, as contrasted with cancer which was being negligently treated, could have explained [the decedent]'s deterioration and death. The instant record presents a factual setting in which it may be impossible for a lay person, unskilled in medicine, reasonably to understand or appreciate that actionable harm has been done him. On these facts, when the plaintiffs should have discovered the survival claim is a jury question.

*Geisz*, 313 Md. at 317, 545 A.2d 658 (some citations and internal quotation marks omitted). *But see Waddell v. Kirkpatrick*, 331 Md. 52, 54, 66, 626 A.2d 353 (1993) (The Court of Appeals affirmed a grant of summary judgment on the defense of limitations because the plaintiff did not allege fraud or fraudulent concealment, and therefore, *Geisz* and similar cases did not apply and no factual question existed.)

### (b) The Continuing Harm Theory

▉▉▉▉▉ Another exception to the accrual of the statute of limitations is the continuing harm theory. In *MacBride v. Pishvaian*, 402 Md. 572, 584, 937 A.2d 233 (2007), the Court of Appeals explained the continuing harm theory as follows:

This Court and the Court of Special Appeals have recognized the "continuing harm" or "continuous violation" doctrine, which tolls the statute of limitations in cases where there are continuous violations. Under this theory, violations that are continuing in nature are not barred by the statute of limitations merely because one or more of them occurred earlier in time. . . . "[C]laims that are in the nature of a 'continuous tort,' such as nuisance, can extend the period of limitations due to their new occurrences over time[."] Continuing violations that qualify under this theory are continuing unlawful acts, for example, a monthly over-charge of rent, not merely the continuing effects of a single earlier act. [The] " 'continuing tort doctrine' requires

that a tortious act—not simply the continuing ill effects of prior tortious acts—fall within the limitation period[."]
(Footnote and citations omitted).

### (c) Failure to State a Claim

The defense of failure to state a claim upon which relief may be granted may be asserted in a motion to dismiss filed before the answer pursuant to Md. Rule 2–322(b). If the defense is not asserted in a preliminary motion to dismiss, the "defense[ ] and objection[ ] may be made in the answer, or in any other appropriate manner after answer is filed." *Id.* The general time for filing an answer to a complaint is "within 30 days after being served[.]" Md. Rule 2–321(a). An automatic extension is granted, however, "[w]hen a motion is filed pursuant to Rule 2–322[.]" Md. Rule 2–321(c). In that case, "the time for filing an answer is extended without special order to 15 days after entry of the court's order on the motion[.]" *Id.* Generally, the defense of the statute of limitations is an affirmative defense, which must be set forth as a separate defense in an answer. Md. Rule 2–323(g)(15). However,

[w]here the limitations defense is apparent from the face of the complaint, it has been held subsumed within the broader defense that the complaint fails to state a cause of action upon which relief can be granted, and it therefore may be raised under the aegis of that defense in a motion to dismiss under Md. Rule 2–322(b). But the raising of that broader defense through a motion to dismiss is permissive rather than mandatory. See Md. Rule 2–322(b) and the interplay between Rules 2–322(f) [28] and 2–324.[29]

---

**28.** Md. Rule 2–322(f) provides: "A party who makes a motion under this Rule may join with it any other motions then available to the party. No defense or objection raised pursuant to this Rule is waived by being joined with one or more other such defenses or objections in a motion under this Rule. If a party makes a motion under this Rule but omits any defense or objection then available to the party that this Rule permits to be raised by motion, the party shall not thereafter make a motion based on the defenses or objections so omitted except as provided in Rule 2–324."

**29.** Md. Rule 2–324(a) provides: "A defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party

*Suburban Hosp. v. Dwiggins*, 83 Md.App. 97, 120–21 [573 A.2d 835] (1990), *rev'd on other grounds*, 324 Md. 294 [596 A.2d 1069] (1991).

## G. Analysis

### (1) Statute of Limitations[30]

■■■ Upon review of the record, we conclude that the circuit court properly dismissed appellant's tort and constitutional claims against all appellees on the ground that the claims are barred by the statute of limitations. In dismissing the third amended complaint, the circuit court stated as follows:

The undisputed facts in this case reveal that on January 11, 2001, plat 21707 was recorded. The undisputed facts reveal that [appellant] took title to the[ ] property, which was subsequently recorded on October 1st, 2002. The law is clear that [appellant was] on notice at the time that [he] took title.

As to what is contained in the[ ] actual chain of title, even if [he] had not seen it, heard it, or imagined that it existed,

---

under Rule 2–211, an objection of failure to state a legal defense to a claim, and a defense of governmental immunity may be made in any pleading or by motion for summary judgment under Rule 2–501 or at the trial on the merits."

**30.** For purposes of analysis of the statute of limitations, we will only address the "blocking" of access to Gold Mine Road to the north as Christine Hill was the only appellee alleged to have "blocked" appellant's access to Brooke Road to the south. Appellant specifically alleged as follows: "The southward access to Brooke Road continued until approximately 2005 when it was deliberately blocked by Defendant Christine Hill, who placed a chain barrier prohibiting access to property owners from Brooke Road." On May 29, 2009, appellant settled all claims against Christine Hill and filed a Stipulation of Dismissal dismissing all claims against her. Although at oral argument appellant contended the case involved the lack of southern access to his property, as appellant has voluntarily dismissed all claims against Christine Hill, it is Farm Road's northern access to Gold Mine Road, alleged to have been blocked through the actions of the Commission Group, Brown, and the MHG Group, that is at issue.

accordingly the statute of limitations applies to Counts 3 through 9 in [the] third amended complaint.

On remand, the circuit court confirmed dismissal of the tort and constitutional claims on the ground of the statute of limitations. In agreement with the circuit court, we conclude that, under the "discovery rule," appellant's tort and constitutional claims began to accrue, for purposes of the statute of limitations, when he purchased the property in 2002. At the time that appellant took title to the property, he "knew or, with due diligence, reasonably should have known" that Farm Road's access north to Gold Mine Road was "permanently cut" in 1994 as he alleged in the third amended complaint. Indeed, in the original complaint, appellant alleged that, at the time he purchased the property in 2002, the Farm Road was in "remnants" and in need of repair, such that he could not use the road until it was repaired. Of import, appellant alleged that as a result of cleaning up, filling in, and building up Farm Road, "he eventually reconstructed substantially all the [Farm Road] from Brooke Road to his Subject Property[,]" i.e. to the south.

Tellingly, appellant has never alleged that he used Farm Road to access Gold Mine Road. In the second amended complaint, appellant alleged that he regularly used Farm Road to Brooke Road until "approximately Eighteen (18) months ago when it was intentionally blocked by Defendant Christine Hill." In the third amended complaint, appellant alleged as follows as to Brooke Road: "The southward access to Brooke Road **continued** until approximately 2005 when it was deliberately blocked by Defendant Christine Hill, who placed a chain barrier prohibiting access to property owners from Brooke Road." (Emphasis added). At no point did appellant allege that he repaired Farm Road for use to Gold Mine Road to the north. As to actual use of the northern access, appellant has alleged only that landowners in the area "have attested to the fact that the Farm Road has been used on a regular basis for multiple generations and that access to Gold[ M]ine Road was permanently cut with the construction of Defendant Warren Lee Brown's subdivision."

Notably, in the second amended complaint, appellant claims in five separate instances that he should be awarded relief from the date his property rights were violated and that "such time period shall be deemed [to] begin on December 30, 1994, as the date the tortious taking occurred[.]"[31] December 30, 1994, is the date the Conservation Easement Agreement between Brown and the Commission was recorded in the Land Records of Montgomery County. After 1994, as appellant acknowledges in the third amended complaint, in 2001, Brown recorded Plat 21707 in the Land Records of Montgomery County. The combination of these undisputed facts is sufficient under the "discovery rule" to establish that appellant was on inquiry notice, if not actual notice, of his potential claims at the time he purchased the property in 2002. As such, the statute of limitations for the tort and constitutional claims expired on October 1, 2005, pursuant to CJP § 5–101, whereas the statute of limitations for the slander of title claim expired on October 1, 2003, pursuant to CJP § 5–105. Appellant did not file the original complaint until June 9, 2006, well after the statute of limitations for the claims had expired, thereby barring the claims he sought to bring.

Upon review of the record, including appellant's deed, the Lawrence Map, and Plat 21707, we agree that Plat 21707 is not included in appellant's chain of title, but we conclude nonetheless that appellant was, at a minimum, on inquiry

---

**31.** For example, in the third count, for fraud, slander of title, and civil conspiracy, appellant prayed for relief as follows:

WHEREFORE, Each Plaintiff claims compensatory damages, both direct and consequential, against Defendants Warren Lee Brown, Richard S. Alper, Douglass H. Riggs, III and Macris, Hendricks and Glascock, P.A., jointly and severally, in the amount of one million ($1,000,000.00) dollars per Plaintiff, plus exemplary (punitive) damages against each of these Defendants in the amount of one-thousand five-hundred ($1,500.00) dollars per Plaintiff per day for **the entire period that Plaintiffs' property's rights were violated, such time period shall be deemed [to] begin on December 30, 1994, as the date the tortious taking occurred,** plus pre-judgment interest, post-judgment interest, attorneys' fees and costs and Order disgorgement of Defendants' profits by way of the Court finding in favor of Plaintiffs equitable claim to quiet title[.]

(Emphasis added).

notice that northern access to Farm Road was not available at the time of his purchase of the property in 2002. In *Bright,* 104 Md.App. at 424–25, 656 A.2d 377, we summarized chain of title notice as follows:

> An owner's "chain of title" is simply the preceding recorded deed (or other instruments of transfer, such as a will) going back in time, in order, i.e., the last recorded to first recorded instrument. In Maryland, these deeds or instruments are generally found in the public land records, testamentary records, Orphans' Court records, and judgment and lien records of the particular county wherein the land is located. A subsequent owner, therefore, has notice of what is contained in his or her actual chain of title even if he or she has never seen it, heard it, or even imagined that it existed.

(Emphasis omitted). According to the Lawrence Map, appellant's property lies south of the conservation easement created by Plat 21707, and two lots owned by others lie between appellant's property and the conservation easement. The conservation easement does not abut appellant's property. Plat 21707 references multiple deeds of adjacent properties, and the deed to appellant's property is not referenced in the Plat. Nothing on the face of Plat 21707 indicates that the Plat would or should be contained within appellant's chain of title, as the conservation easement and appellant's property, while close to each other, are not adjacent properties. As Plat 21707 is not a "preceding recorded deed (or other instrument[ ] of transfer, such as a will) going back in time," as to ownership of appellant's property, the plat is not a part of appellant's chain of title. *Id.*

We conclude, nevertheless, that, based on the facts alleged in the third amended complaint, appellant had knowledge of facts sufficient to constitute, at least, inquiry notice for purposes of the statute of limitations as of October 1, 2002, when he took title to the property. In the third amended complaint, concerning Farm Road's access to Gold Mine Road, as stated earlier, appellant acknowledges two important dates: 1994— when the Dellabrooke subdivision was initially approved, and 2001—when Plat 21707 was recorded. By stating in the third

amended complaint that the northward access of Farm Road to Gold Mine Road been "permanently cut" in 1994 and access to Gold Mine Road was prohibited in 2001, appellant, in effect, acknowledged that he "reasonably should have known" or with diligent investigation could have known at the time he purchased the property that he could not use Farm Road to access Gold Mine Road.

As appellant acknowledges, he has not used Farm Road at any time to access Gold Mine Road to the north, or even used Farm Road to access Gold Mine Road until a specific date or event. A logical conclusion is that appellant did not use Farm Road to access Gold Mine Road at all, because he **knew** access was "permanently cut" by actions taken before he purchased the property. In the final analysis, given that appellant conceded he **never** used Farm Road to access Gold Mine Road, nothing in the record conflicts with the conclusion that appellant had, at bottom, inquiry notice, at the time he purchased the property in 2002, that access to the north was unavailable, and the facts give rise to the inference that appellant knew access to the north to Gold Mine Road was not possible.

■ We are unconvinced that a fraudulent concealment theory is applicable in this case. Although appellant alleged fraud and fraudulent concealment in the third amended complaint, the complaint falls far short of setting forth specific allegations of how the fraud kept appellant unaware of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud. *See Archdiocese of Washington,* 114 Md.App. at 187–88, 689 A.2d 634 (citations omitted). Rather, appellant generally alleges that appellees "conspired" and "were aware of, condoned, encouraged and participated in the conspiracy and/or concert of action" which "falsely" denied the existence of Farm Road. Appellant provides no facts to substantiate that appellees' alleged fraud kept him in the dark as to a cause of action or how he discovered the fraud, nor does appellant allege facts accounting for any delay in discovering the fraud despite his "exercise of ordinary diligence."

CJP § 5–203. Absent these specific allegations, we cannot conclude that the fraudulent concealment theory is applicable in this case.

■ Similarly, we are not persuaded that a continuing harm theory is applicable in the case. As the Court of Appeals stated, "[c]ontinuing violations that qualify under this theory are continuing unlawful acts, for example, a monthly over-charge of rent, not merely the continuing effects of a single earlier act." [The] " 'continuing tort doctrine' requires that a tortious act—not simply the continuing ill effects of prior tortious acts—fall within the limitation period[."] *MacBride*, 402 Md. at 584, 937 A.2d 233 (citations omitted). In the third amended complaint, appellant alleged that appellees "have been and continue to be engaged in a course of conduct giving rise to the[ ] causes of action[.]" Appellant alleged, among other things, that appellees "continue to engage in a course of conduct which has deprived, and continues to deprive," appellant of his "constitutional protected rights to liberty and property by concealing the existence of the Farm Road." Bare assertions that there is a continued course of conduct among appellees is not enough to toll the statute of limitations under the continuing harm theory. Indeed, appellant's allegations are more properly understood as asserting "the continuing effects of a single earlier act[,]" in that appellant claimed he was denied access to Farm Road and his property by specific acts allegedly done by appellees at a specific time in the past. *Id.* Appellees are not alleged to be continually blocking appellant's access by new acts daily or periodically. Rather, the access was allegedly blocked in the past, and appellant argues that he still incurs the effects of those acts. As such, the statute of limitations is not tolled under the continuing harm theory.

■ Appellant's argument that some appellees have waived the defense of the statute of limitations by not raising the defense, in an answer, is without merit. A party may raise the defense of the statute of limitations through a permissive preliminary motion to dismiss pursuant to Md.

Rule 2–322(b), under the broader defense of the complaint failing to state a cause of action upon which relief may be granted. *See Suburban Hosp.*, 83 Md.App. at 120–21, 573 A.2d 835.

■ At oral argument, appellant contended that before a motion to dismiss on the ground of the statute of limitations may be granted, appellees must demonstrate prejudice. Appellant did not provide any case law—and this Court is not aware of any case law—requiring that a party demonstrate prejudice before raising the defense of the statute of limitations. At oral argument, appellant contended that in *Poffenberger*, 290 Md. 631, 431 A.2d 677, the Court of Appeals stated the statute of limitations may not be used as a defense against someone who does not know they are being damaged. In *Poffenberger*, 290 Md. at 637, 431 A.2d 677, however, the Court held that the statute of limitations is activated when, either by express knowledge or implied awareness of the circumstances, "a person of ordinary prudence" would have investigated the matter. As such, a person "cannot fail to investigate when the propriety of the investigation is naturally suggested by circumstances known to him; and if he neglects to make such inquiry, he will be held guilty of bad faith and must suffer from his neglect." *Id.* (citations omitted). Nothing in the record demonstrates that appellant was unaware of the circumstances surrounding his access to the property at the time he purchased it in 2002, such that he should be excused from having investigated until 2006, when he first filed a complaint. The Court of Appeals's decision in *Poffenberger* does not alter the result in this case. We conclude that, at a minimum, appellant had inquiry, if not actual, notice of his claims in 2002, and that the statute of limitations expired on October 1, 2005, before the original complaint was filed in the case. Accordingly, the circuit court properly dismissed counts III through IX of the third amended complaint as to the Commission Group, the MHG Group, and Brown, as those are the parties alleged to have blocked Farm Road's access to Gold Mine Road. The circuit court properly dismissed counts III through IX of the third amended com-

plaint as to all remaining appellees, as those causes of action stem from the blocking of access over Farm Road.

## (2) Duty of Care Owed by the MHG Group

Although we conclude that the circuit court properly dismissed the claims against the MHG Group on the ground that the statute of limitations had expired, we shall briefly address the issue of whether the MHG Group owed appellant a duty of care. Appellant contends that the MHG Group, as licensed surveyors, owed a duty of care under Maryland law to members of the public, including him, to correctly survey Brown's property and include Farm Road in the survey. Simply put, we disagree.

The Court of Appeals has explained the duty requirement as follows:

> "There can be no negligence where there is no duty that is due; for negligence is the breach of some duty that one person owes to another. It is consequently relative and can have no existence apart from some duty expressly or impliedly imposed. In every instance before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which duty would have averted or avoided the injury. . . . As the duty owed varies with circumstances and with the relation to each other of the individuals concerned, so the alleged negligence varies, and the act complained of never amounts to negligence in law or in fact; if there has been no breach of duty."

*Doe v. Pharmacia & Upjohn Co.*, 388 Md. 407, 414–15, 879 A.2d 1088 (2005) (citation omitted). "The existence of a legal duty is a question of law, to be decided by the court." *Id.* at 414, 879 A.2d 1088 (citations omitted).

Our holding in *Carlotta*, 57 Md.App. 467, 470 A.2d 838, is instructive. In *Carlotta*, 57 Md.App. at 472, 470 A.2d 838, this Court held that "a surveyor of a disputed boundary line does not owe a duty of care to a non-reliant third party adjacent landowner. A surveyor, therefore, cannot be held liable to

such a plaintiff." The Carlottas filed suit against the Heaths, adjacent property owners, and T.R. Stark & Associates, Inc., a registered land surveyor. *Id.* at 468–69, 470 A.2d 838. The Carlottas alleged that the Heaths were trespassing on their property and had fraudulently attempted to gain ownership of a portion of their property. *Id.* The Carlottas claimed that the surveyor "had aided and abetted the Heaths by negligently preparing [for the Heaths] an erroneous survey plat of the disputed property boundary. They alleged that the plat prepared by Stark had been based upon a monument suggested to him by the Heaths as the point of beginning, which the Heaths knew or should have known to be false." *Id.* at 469, 470 A.2d 838. On appeal, the Carlottas relied on authorities from other jurisdictions in an attempt to establish that the surveyor owed them a duty of care. *Id.* at 470, 470 A.2d 838. Upon review, we found the cases were factually distinctive and not dispositive of the issue. *Id.* at 471–72, 470 A.2d 838. For example, we reviewed a Georgia case, *Hutchinson v. Dubeau*, 161 Ga.App. 65, 289 S.E.2d 4 (1982), and observed that in Georgia, a statute "imposed upon registered land surveyors an obligation to assume responsibility to the public for the accuracy of work they certified had been performed accurately." *Carlotta*, 57 Md.App. at 471, 470 A.2d 838. Given that Maryland does not have a similar statute, we declined to apply the rationale of the Georgia appellate court. *Id.* Absent Maryland law recognizing the cause of action the Carlottas brought against the surveyor, we held that the surveyor did not owe the Carlottas a duty of care. *Id.* at 470, 472, 470 A.2d 838.

At the heart of this case and *Carlotta* is whether a surveyor owes a duty of care to other property owners aside from the person who employs him.[32] Here, there is a dispute concerning a licensed land surveyor who allegedly conducted a survey and "deliberately omitted" Farm Road as an easement. Applying *Carlotta*, we hold that the mere licensing of surveyors does not create a private cause of action by members of

---

**32.** This opinion takes no position on whether or not a surveyor owes a duty of care to the party who hires the surveyor.

the general public against those surveyors. As we observed in *Carlotta*, 57 Md.App. at 471, 470 A.2d 838, Maryland does not have a statute imposing a duty on a registered surveyor "to assume responsibility to the public for the accuracy of work they certified had been performed accurately." Absent any statutory or case law in Maryland demonstrating that a surveyor owed a duty of care to the general public, including appellant, or that Maryland intended to create such a duty through licensing, we decline to find that the MHG Group owed a duty to appellant.[33] *See also Columbia Town Ctr. Title Co. v. 100 Investment Ltd. P'ship*, 203 Md.App. 61, 82–86, 36 A.3d 985 (2012) (We did not extend tort liability to title companies, noting that "[w]e have not been directed to, nor have we found, a statutory obligation in Maryland that imposes on either a title company or a title insurer a duty to exercise due care in performing a title search, such as found in some other jurisdictions."). For the reasons stated above, the circuit court properly dismissed counts III through IX of the third amended complaint as to the MHG Group upon finding that the MHG Group did not owe a duty of care to appellant.

### III. The Second and Fourth Amended Complaints

Appellant contends that the circuit court abused its discretion in striking the second and fourth amended complaints. Given the nature of the contentions, we need not reiterate them before turning to our discussion of the issue.

---

**33.** Appellant argues, alternatively, that the MHG Group's actions are so grievous as to create an immediate apparent duty under the doctrine of *res ipsa loquitur*. To establish an inference of negligence on the part of a defendant under *res ipsa loquitur*, a plaintiff must demonstrate three criteria, including: (1) "[a] casualty of a sort which usually does not occur in the absence of negligence"; (2) "[c]aused by an instrumentality within the defendant's exclusive control"; (3) "[u]nder circumstances indicating that the casualty did not result from the act or omission of the plaintiff." *Meda v. Brown*, 318 Md. 418, 423, 569 A.2d 202 (1990) (citation omitted). Other than stating the basic doctrine of *res ipsa loquitur* itself, appellant provides no facts demonstrating the three criteria needed to invoke the doctrine. We, therefore, decline to address the matter further.

## A. Standard of Review

 "The decision whether to grant a motion to strike is within the sound discretion of the trial court." *First Wholesale Cleaners, Inc. v. Donegal Mut. Ins. Co.*, 143 Md.App. 24, 41, 792 A.2d 325 (2002) (citations omitted). An abuse of discretion occurs "where no reasonable person would take the view adopted by the [trial] court[ ] . . . or when the court acts without reference to any guiding principles, and the ruling under consideration is clearly against the logic and effect of facts and inferences before the court[ ] . . . or when the ruling is violative of fact and logic." *Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 28, 878 A.2d 567 (2005) (citations and internal quotation marks omitted) (alterations and omissions in original).

## B. Relevant Law

Md. Rule 2–303, on the form of pleadings, provides, in pertinent part, as follows:

> (b) Contents. Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings are required. A pleading shall contain only such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense. It shall not include argument, unnecessary recitals of law, evidence, or documents, or any immaterial, impertinent, or scandalous matter.

*See Manikhi v. Mass Transit Admin.*, 360 Md. 333, 342, 758 A.2d 95 (2000) (Dismissal of a complaint with leave to amend was proper where the initial complaint filed was over sixty pages in length, consisting of 241 paragraphs, and where the trial judge commented that she had been unable to discern a cause of action alleged within the first forty pages.)

In general, amendment of pleadings is governed by Md. Rule 2–341, which provides, in pertinent part:

> (a) Without leave of court. A party may file an amendment to a pleading without leave of court by the date set forth in a scheduling order or, if there is no scheduling order, no later than 30 days before a scheduled trial date.

. . .

(b) With leave of court. A party may file an amendment to a pleading after the dates set forth in section (a) of this Rule only with leave of court.

Leave of court is required in certain circumstances. For example, Md. Rule 2–322(c) provides that in disposing of a preliminary motion, such as a motion to dismiss, "[i]f the court orders dismissal, an amended complaint may be filed only if the court expressly grants leave to amend. The amended complaint shall be filed within 30 days after entry of the order or within such other time as the court may fix."

Md. Rule 2–322(e) outlines the procedure for motions to strike and provides as follows:

On motion made by a party before responding to a pleading or, if no responsive pleading is required by these rules, on motion made by a party within 15 days after the service of the pleading or on the court's own initiative at any time, the court may order any insufficient defense or any improper, immaterial, impertinent, or scandalous matter stricken from any pleading or may order any pleading that is late or otherwise not in compliance with these rules stricken in its entirety.

In *Beyond Systems, Inc.*, 388 Md. at 29, 878 A.2d 567, the Court of Appeals held that "the trial court did not abuse its discretion in denying the motion for reconsideration and striking [petitioner]'s Amended Complaint." In *Beyond Systems, Inc.*, 388 Md. at 8–9, 878 A.2d 567, after the trial court dismissed petitioner's complaint for lack of personal jurisdiction over respondents, petitioner filed a motion for reconsideration with an amended complaint attached, which included additional allegations and named an additional defendant. Respondents moved to strike the amended complaint, and the trial court granted the motion to strike the amended complaint. *Id.* at 9, 878 A.2d 567. On review, the Court of Appeals concluded that "[d]espite the preference for freely permitted amendments, [petitioner] failed to introduce any new facts to cure its inability to produce *prima facie* evidence of Mary-

land's personal jurisdiction over [respondents]." *Id.* at 29, 878 A.2d 567.

In *Prudential Securities Inc. v. e-Net, Inc.,* 140 Md.App. 194, 234, 780 A.2d 359 (2001), we held that the trial court abused its discretion in granting appellees' motion to strike the amended complaint "[i]n light of the policy in this State allowing liberal amendment of the pleadings, and because a trial date was not set at the time the Amended Complaint was filed[.]" In *Prudential,* 140 Md.App. at 206, 780 A.2d 359, appellant filed an amended complaint "[o]n the last day for filing dispositive motions, and prior to filing an opposition to e-Net's motion for summary judgment[.]" Appellees moved to strike the amended complaint, and the trial court granted both motions to strike as well as appellees' motions for summary judgment. *Id.* at 207, 780 A.2d 359. Before this Court, appellant argued that the amended complaint was based on recently gathered information not made available to appellant until approximately two weeks before it filed the amended complaint. *Id.* at 230–31, 780 A.2d 359. After reviewing and comparing the two complaints, we determined that although appellant alleged facts in the amended complaint not included in the original complaint, the same "operative factual pattern" remained and the amended complaint "merely contained more factual detail than the original complaint." *Id.* at 234, 780 A.2d 359. As such, we reversed the trial court's grant of the motions to strike. *Id.*

## C. Analysis

 In this case, we conclude that the circuit court neither abused its discretion in striking the second nor fourth amended complaints. As to the second amended complaint, the circuit court granted appellees' motions to strike, but specifically provided appellant leave to amend. The circuit court observed during the hearing of March 13, 2008, that the second amended complaint was long, contained multiple causes of action against a "number of individuals," and violated Md. Rule 2–303(b) by including "argument, unnecessary recitals of law, immaterial, impertinent, or scandalous matter." The

circuit court stated, however, that while there was an "overriding interest to have the complaint conform to the pleading[ ] requirements," it "certainly [would] give [appellant] an opportunity to amend[.]" The record reflects that appellant, in fact, filed a third amended complaint by the date specified by the circuit court. Although appellant argues that the circuit court "sent mixed signals" regarding the second amended complaint, appellant was given—and took—the opportunity to amend and file a third amended complaint. Based on these facts, we cannot say that the circuit court abused its discretion in dismissing the second amended complaint.

■■■ Without doubt, the circuit court properly struck the fourth amended complaint. At the time appellant filed the fourth amended complaint, the case was on remand from this Court. On remand, we ordered the circuit court to enter "a declaration of the respective rights of the parties and adjudicat[e] all of the claims [including the cross-claim.]" At no point in the remand Order did this Court provide appellant with an opportunity to file a fourth amended complaint. To the contrary, the stated purpose of remand was to adjudicate existing matters, not start anew with another amended complaint. In keeping with this purpose, on remand, the circuit court specifically requested that the parties submit "proposed declaratory judgments in respect of the third amended complaint." Appellant disregarded the circuit court's instructions and instead filed a fourth amended complaint.

■■■ Aside from the stated purpose of remand, the Maryland Rules required leave of the circuit court for filing the fourth amended complaint. At the time that appellant filed the fourth amended complaint, appellees' motions to dismiss the third amended complaint had already been granted by the circuit court. Md. Rule 2–322(c) provides that "if the court orders dismissal, an amended complaint may be filed only if the court expressly grants leave to amend." Such amended . complaint "shall be filed within 30 days after entry of the order or within such other time as the court may fix." *Id.*

Nothing in our Order dated September 30, 2009, remanding the case, altered the requirement under the Maryland Rules that appellant seek leave to amend before filing another complaint. We find no abuse of discretion in the circuit court's striking of the fourth amended complaint.[34]

## IV. Discovery

### A. Contentions

Appellant contends that the circuit court abused its discretion in dismissing appellant's claims "without allowing appellant[ ] any opportunity for meaningful discovery." The Commission Group counters that the circuit court "appropriately exercised its discretion by resolving the legal questions presented in the preliminary motions prior to resolving the discovery motions." In short, we agree with the Commission Group.

### B. Standard of Review

■■■ "We review the denial of discovery under the abuse of discretion standard and will only conclude that the trial court abused its discretion where no reasonable person would take the view adopted by the [trial] court[ ] ... or when the court acts without reference to any guiding principles, and the ruling under consideration is clearly against the logic and effect of facts and inferences before the court[ ] ... or when the ruling is violative of fact and logic." *Beyond Systems, Inc.*, 388 Md. at 28, 878 A.2d 567 (citations and internal quotation marks omitted).

---

34. Although appellant is correct that amended pleadings are to be freely permitted no later than 30 days before any scheduled trial date, that general rule applies only to amended pleadings that may be filed **without leave of court** pursuant to Md. Rule 2–341(a). Unlike *Prudential Securities*, 140 Md.App. at 206, 780 A.2d 359, where the plaintiff filed an amended complaint during the motions phase of the case before a trial date was set, in this case, the preliminary motions phase was effectively over as appellant's third amended complaint had been dismissed at the time he attempted to file the fourth amended complaint.

### C. Relevant Law

In *Gallagher Evelius & Jones, LLP v. Joppa Drive–Thru, Inc.,* 195 Md.App. 583, 596, 7 A.3d 160 (2010), we observed that "the circuit court . . . has the inherent power to control and supervise discovery as it sees fit." (Citation omitted). As such, "[w]hen there is a claim of failure of discovery, the circuit court has broad discretion to fashion a remedy based on a party's failure to abide by the rules of discovery." *Id.* (citation omitted). In situations

> when there is no hard and fast rule governing the situation . . . the trial judge must exercise his or her judicial discretion. The decision he or she makes, in turn, is reviewed for the soundness and reasonableness with which the discretion was exercised. In making that evaluation, the reviewing court must defer to the trial court. The necessity for doing so is inherent in the very nature of judicial discretion. The exercise of judicial discretion ordinarily involves making a series of judgment calls, not simply the ultimate one, but also those on which the ultimate one depends.

*Id.* at 596–97, 7 A.3d 160 (citations omitted).

In *Beyond Systems, Inc.,* 388 Md. at 28–29, 878 A.2d 567, the Court of Appeals held that the trial court did not abuse its discretion in ruling on a motion to dismiss and denying appellant's request for discovery because petitioner "was unable to produce *any* evidence of a connection between" respondents. (Emphasis in original). Before the Court of Appeals, respondents argued that the trial court did not abuse its discretion in denying discovery because petitioner "provided no basis upon which to grant discovery beyond conclusory allegations and bald-faced assertions of [personal] jurisdiction." *Id.* at 13, 878 A.2d 567. On review, the Court of Appeals agreed that "the trial court's decision [was] not beyond the decision that a reasonable person would make in light of the fact[s]." *Id.* at 28, 878 A.2d 567.

### D. Analysis

We discern no abuse of discretion in the dismissal of appellant's claims prior to completion of the discovery. As

noted above, the circuit court "has the inherent power to control and supervise discovery as it sees fit." *Gallagher*, 195 Md.App. at 596, 7 A.3d 160 (citation omitted). We agree with the Commission Group that the circuit court "appropriately exercised its discretion by resolving [ ] legal questions presented in the preliminary motions prior to resolving the discovery motions." In this case, there were numerous parties, claims, and preliminary motions and responses filed, raising significant legal issues as to which parties appellant could proceed against and his ability to bring the action. Although discovery had begun in the case, the circuit court properly resolved the preliminary motions to strike and dismiss, rather than permit discovery as to factual matters not related to the legal issues raised by the preliminary motions. Given that the completion of discovery had no bearing on the legal issues before the court, as in *Beyond Systems, Inc.*, 388 Md. at 28, 878 A.2d 567, we do not find "that the trial court's decision in the present case is beyond the decision that a reasonable person would [have made]" under similar circumstances.

**JUDGMENTS OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**